# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 15, 2025 Session

## ROBERT ELMORE v. TRAVIS L. MILLS, CRNA, ET AL.

**Appeal from the Circuit Court for Jefferson County**
No. 26995-III        Rex H. Ogle, Judge

———————————————

**No. E2023-01064-COA-R9-CV**

———————————————

Lonnie Elmore ("Decedent") died on July 5, 2020, a few weeks after being treated by Angelo J. Sorce, M.D., ("Sorce"), an employee of Tennessee Valley Orthopaedics, LLC ("TVO"), (collectively "Defendants") and Travis Mills, CRNA, ("Mills") an employee of Lakeway Regional Anesthesia Services, PLLC ("Lakeway"). On July 2, 2021, Robert Elmore, as Executor of the Estate of Lonnie Elmore, ("Plaintiff") sent pre-suit notice to Defendants. Relying on the 120-day extension provided for by Tenn. Code Ann. § 29-26-121(c), Plaintiff filed his complaint alleging wrongful death on November 1, 2021, in the Circuit Court for Jefferson County ("the Trial Court"). Defendants filed a motion to dismiss, pursuant to Tennessee Rule of Civil Procedure 12.02(6), claiming that the accrual of Plaintiff's cause of action arose no later than June 21, 2020, meaning Plaintiff provided pre-suit notice past the one-year statute of limitations, rendering his complaint untimely. Defendants also argued that Plaintiff failed to comply with the pre-suit notice requirements of Tenn. Code Ann. § 29-26-121(a). The Trial Court disagreed and denied Defendants' motion to dismiss. This interlocutory appeal, pursuant to Tennessee Rule of Appellate Procedure 9, followed. We reverse.

### Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Heidi A. Barcus and Meagan Collver, Knoxville, Tennessee, for the appellants, Angelo J. Sorce and Tennessee Valley Orthopaedics, LLC.

Edward G. White, II; B. Chase Kibler; and John P. Taylor, Knoxville, Tennessee, for the appellants, Travis L. Mills and Lakeway Regional Anesthesia Services, PLLC.

R. Christopher Gilreath, Nashville, Tennessee, for the appellee, Robert Elmore, as Executor of the Estate of Lonnie Elmore.

# OPINION

# BACKGROUND

Plaintiff filed a complaint alleging wrongful death against Defendants in the Trial Court on November 1, 2021. Plaintiff alleged that Decedent went to the Jefferson Memorial Hospital ("the Hospital") with left hip pain after falling at home. Decedent was admitted to the Hospital after being diagnosed with a "left femoral neck fracture" in his hip. The admitting physician requested an orthopedic consult from Sorce and noted that Decedent would have nothing by mouth ("n.p.o.") after midnight due to the likelihood of surgery the next day, on June 17, 2020.

According to the complaint, Sorce, "an employee, servant, actual and/or implied agent of" TVO, met with Decedent the next morning, on June 17, 2020. Sorce determined that Decedent needed a left hip bipolar hemiarthroplasty and that the surgery would be done the next day, June 18, 2020, after Decedent was cleared for surgery by medical services. Plaintiff alleged that around 10:51 a.m. on June 17, 2020, Sorce ordered Decedent to be on regular diet. Plaintiff further alleged that after Sorce changed Decedent's orders to include a regular diet, nurses visited Decedent's room at least five separate times on June 17, 2020, and that one nurse who visited Decedent that day had entered Sorce's regular diet order into the medical record.

Plaintiff explained that Sorce decided to go ahead with the left hip surgery on June 17, 2020 rather than June 18, 2020. Decedent was brought to the operating suite, despite not being "n.p.o" that day, per Sorce's order. Plaintiff alleged the following:

> Defendants, individually, jointly, and/or severally, did not investigate Mr. Elmore's food intake by asking nursing staff if a food tray had been delivered and/or consumed.

> Defendants, individually, jointly, and/or severally, did not investigate Mr. Elmore's food intake by asking the Food and Nutrition Department if a food tray had been delivered and/or consumed.

> Defendants, individually, jointly, and/or severally, did not investigate Mr. Elmore's food intake by reviewing a call log to see if a meal tray was requested and/or delivered.

> Defendants, individually, jointly, and/or severally, suspected Mr. Elmore had consumed a meal tray on June 17, 2020 prior to surgery.

However, despite no investigation or clear understanding whether Mr. Elmore had consumed a meal tray, Defendants, individually, jointly, and/or severally, proceeded with surgery on June 17, 2020.

Prior to initiation of anesthesia and surgery on June 17, 2020, Mr. Elmore had a full stomach and copious amounts of partially digested food and liquid.

(Paragraph numbering omitted.)

Plaintiff alleged that Mills administered general endotracheal tube anesthesia starting at or around 7:02 p.m. and that Sorce proceeded with his surgery starting at or around 7:20 p.m on June 17, 2020. Decedent had an aspiration event after Sorce completed the operation. Mills performed stomach content aspiration and protection of the airway for an additional twenty minutes. Mills decided to keep Decedent ventilated but planned on weaning him from the ventilator in the morning. However, Mills decided to keep Decedent ventilated because he was suffering from hypoxic respiratory failure. The next morning, on June 18, 2020, Decedent was extubated, but he was quickly reintubated for "hypoxic failure with respiratory acidosis." After a pulmonary consultation and a chest x-ray, it was determined that Decedent was suffering from pneumonia.

Plaintiff further alleged that Decedent "underwent a sedation vacation" on June 20, 2020, and was unable to awaken, did not follow commands, and was only minimally responsive. According to Plaintiff, healthcare providers determined that Decedent was encephalopathic. The next day, on June 21, 2020, Decedent was "transferred to University of Tennessee Medical Center for further pulmonology evaluation and for possible neurology evaluation due to the persistent encephalopathy and respiratory failure."

Plaintiff explained that on June 22, 2020, Decedent's respiratory function continued to decline, and his encephalopathy progressed. Decedent was suffering from "severe septic shock, likely due to a pulmonary source." On July 2, 2020, healthcare providers determined that they had done all they could for Decedent, and he was discharged home with hospice care. Decedent died on July 5, 2020, as a result of "acute respiratory failure and left lower lobe pneumonia."

Plaintiff alleged that Sorce was "negligent and/or deviated from the recognized standard of acceptable professional practice" and that TVO was "vicariously liable for the negligence of its employees, agents, and apparent agents concerning the treatment and medical care" of Decedent at all times relevant. Plaintiff demanded a jury trial and sought compensatory damages in the amount of $1.5 million for the wrongful death of Decedent.

Defendants filed an answer, specifically arguing, *inter alia*, that Plaintiff had failed to provide Defendants with HIPAA-compliant medical authorizations allowing them to obtain complete medical records from all other providers being sent pre-suit notice and

also failed to attach to the complaint all required documentation evidencing proper service of pre-suit notice. Defendants, accordingly, argued that Plaintiff was not entitled to rely upon the 120-day extension of the one-year statute of limitations. Defendants also denied that Sorce was an employee or agent of TVO, asserting that TVO was not in existence at the time of these events.

In March 2022, Defendants filed a motion to dismiss, pursuant to Tennessee Rule of Civil Procedure 12.02(6), arguing that Plaintiff did not timely send pre-suit notice within the applicable one-year statute of limitations, which they alleged expired no later than June 21, 2021. Defendants also reiterated their arguments in their answer related to Plaintiff's failure to comply with the pre-suit notice requirements. Due to Plaintiff's purported failure to comply with the pre-suit notice requirements, Defendants alleged they were limited in their ability to evaluate the case in the "pre-suit notice phase" and were limited in the medical records they would have been able to obtain, frustrating the purpose of the statute.

Defendants alleged the following noncompliant medical authorizations:

(1) The HIPAA authorization allowing TVO to obtain medical records from the Hospital was not signed, was not dated, and provided no expiration date;

(2) The HIPAA authorization allowing TVO to obtain records from itself was not signed, was not dated, and provided no expiration date;

(3) The HIPAA authorization allowing Sorce to obtain medical records from Mills was not signed, was not dated, and provided no expiration date; and

(4) Plaintiff failed to provide Sorce with a HIPAA authorization allowing him to obtain records from Tazewell Orthopaedic & Arthritis Clinic, P.C., another entity listed as a provider that was sent pre-suit notice.

Plaintiff filed a response, arguing that his cause of action did not accrue until Decedent's death on July 5, 2020, rendering his pre-suit notice timely. Plaintiff also argued that he had substantially complied with the pre-suit notice requirements of Tenn. Code Ann. § 29-26-121. Plaintiff argued that only one medical authorization failed to meet one provision of Tenn. Code Ann. § 29-26-121. Plaintiff acknowledged that "the copy of the authorization to Defendant Sorce for Travis Mills, CRNA attached to the Complaint was unsigned and not dated." Plaintiff, however, argued that Defendants failed to demonstrate that they were prejudiced. According to Plaintiff, the "relevant records" in this case consisted exclusively of the hospital chart. Given that both Sorce and Mills were treating providers of Decedent at the Hospital, both already had full access to the entire chart. Plaintiff argued: "HIPAA regulations expressly grant Defendant Sorce and Defendant Mills access to the relevant medical records of one another for treatment, payment and healthcare operations. 45 C.F.R. §164.506. Therefore, Defendant Sorce and Defendant

- 4 -

Mills were already legally able to consult with one another about these permitted functions without breaching HIPAA."

After a hearing in November 2022, the Trial Court entered an order denying Defendants' motion to dismiss in January 2023. The Trial Court concluded:

After consideration of the filed memoranda, arguments of counsel, and the record in this cause, the Court hereby finds that the statute of limitations in this case was July 5, 2021, and therefore Plaintiff's pre-suit notices mailed July 2, 2021 were timely, and that by operation of Tenn. Code Ann. §29-26-121, Plaintiff's filing of the Complaint on November 1, 2021 was timely.

Further, the Court finds that Plaintiff substantially complied with Tenn. Code Ann. § 29-26-121. The contents of pre-suit notice sent to Defendants Travis L. Mills, CRNA and Lakeway Regional Anesthesia Services, PLLC were compliant with Tenn. Code Ann. §29-26-121. The Court notes that not all medical authorizations to Defendants Dr. Sorce and Tennessee Valley Orthopaedics, LLC were signed, or contained expiration dates. While this is an issue the Court takes seriously, the Court finds that no prejudice to Defendants has been shown, and the Court finds that Plaintiff substantially complied with Tenn. Code Ann. §29-26-121 as to Defendants Angelo J. Sorce, M.D. and Tennessee Valley Orthopaedics, LLC.

In February 2023, Defendants filed a motion for interlocutory appeal, pursuant to Tennessee Rule of Appellate Procedure 9. The Trial Court granted Defendants' motion for interlocutory appeal, concluding that the issues presented were "critical", and "if reversed on appeal, could prevent additional and protracted litigation." This Court entered an order granting their Rule 9 application to consider the Trial Court's denial of Defendants' motion to dismiss based upon the timeliness of pre-suit notice and compliance with Tenn. Code Ann. § 29-26-121. Mills and Lakeway also filed a separate Rule 9 interlocutory appeal, which was decided by this Court in *Elmore v. Mills*, No. E2023-01044-COA-R9-CV, 2024 WL 4563939 (Tenn. Ct. App. Oct. 24, 2024).

Defendants filed a motion to supplement the appellate record in this Court, which was granted. This Court ordered the Trial Court to determine whether and to what extent the record required supplementation. Defendants filed a motion in the Trial Court asking it to supplement the record with (1) Plaintiff's notice letters and medical authorizations, (2) Mills and Lakeway's motion for interlocutory appeal, (3) Defendants' memorandum of law in support of their motion to dismiss, and (4) Defendants' memorandum of law in support of their amended motion for interlocutory appeal.

Plaintiff filed a response, arguing that the Trial Court should also include his discovery requests and Sorce's responses in the appellate record. Defendants filed a reply

opposing the inclusion of discovery materials, given that these materials were not filed in the Trial Court, the Trial Court did not consider them, and that all of the discovery requests were answered "subject to undersigned counsel's objections," which remained unresolved by the Trial Court.

The Trial Court granted Defendants' motion to supplement the appellate record but denied Plaintiff's request to include discovery materials because it did not consider them in denying the motion to dismiss.

Defendants filed another motion with this Court, in part arguing that the appellate record needed to be modified because it contained Plaintiff's response to their original motion to supplement the record, which included the discovery materials as attachments. This Court granted Defendants' motion, ordering the Trial Court to determine whether and to what extent the supplemental record required "correction, modification, or supplementation." The Trial Court granted Defendants' motion and ordered that the discovery materials be "***stricken from the supplemental record***" because it did not consider them in making its decision. The corrected supplemental record was filed and this appeal commenced.

## **Discussion**

This Court granted this application for interlocutory appeal to address the following issues:

1. Whether the Trial Court erred by denying the motion to dismiss upon its determination that Plaintiff's pre-suit notice was timely because the cause of action accrued on July 5, 2020, the date of the Decedent's death.

2. Whether the Trial Court erred by denying the motion to dismiss based upon its determination that Plaintiff had substantially complied with the pre-suit notice requirements of Tennessee Code Annotated § 29-26-121.

This is an appeal of a denial of a motion to dismiss. Our Supreme Court in *Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322 (Tenn. 2020) confirmed that a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss is the "proper vehicle for challenging a plaintiff's compliance with the pre-suit notice requirements of Section 121." *Id.* at 330. We review the Trial Court's denial of Defendants' motion to dismiss *de novo* with no presumption of correctness. *Cothran v. Durham Sch. Servs., L.P.*, 666 S.W.3d 369, 375 (Tenn. Ct. App. 2022).

We note that the first issue presented by Defendants, whether the Trial Court erred in denying the motion to dismiss based on the timeliness of pre-suit notice, has already been decided. In the companion Rule 9 appeal filed by Mills and Lakeway, they argued

only that the Trial Court erred in denying their motion to dismiss based on its finding that Plaintiff's pre-suit notice was timely. In *Elmore v. Mills*, No. E2023-01044-COA-R9-CV, 2024 WL 4563939 (Tenn. Ct. App. Oct. 24, 2024) ("*Elmore I*"), this Court affirmed the Trial Court's denial of their motion to dismiss on this basis, concluding:

> Based upon the allegations of the complaint, we cannot conclude that "no reasonable trier of fact could conclude that" Plaintiff "should not have known through the exercise of reasonable care and diligence [by June 21, 2020] that" Decedent was injured as a result of Defendants' wrongful conduct. Although Plaintiff may have known or should have known that Decedent was injured as a result of wrongful conduct by June 21, 2020, the alleged facts of the complaint are completely silent on this point. Given that Defendants bore the burden to allege and prove that Plaintiff failed to provide pre-suit notice within a year of the accrual of the action, and that we must consider only the complaint and provide Plaintiff with the benefit of all reasonable inferences, we are unable to conclude that Plaintiff failed to provide Defendants with timely pre-suit notice. We, however, respectfully disagree with the Trial Court's conclusion that "the statute of limitations in this case was July 5, 2021 . . . ." From the record at this stage of the proceedings as to the issue of when the statute of limitations ran, we hold only that Defendants failed to satisfy their burden on their motion to dismiss. In the event that this issue is litigated further on remand, we emphasize that the date the cause of action accrued was the date Plaintiff became "aware of facts sufficient to place a reasonable person on notice that the injury was the result of the wrongful conduct of another" as well as the identity of the person or persons whose wrongful conduct caused the injury.

*Id.* at *8 (internal citations omitted). Our conclusion in *Elmore I* applies to the first issue in this case.

Nevertheless, given that we reverse the Trial Court's finding of Plaintiff's substantial compliance with the pre-suit notice requirements as to Defendants, we conclude that Plaintiff did not provide Defendants with effective pre-suit notice at least sixty days prior to filing his complaint, rendering his complaint untimely. We, accordingly, reverse the Trial Court's denial of Defendants' motion to dismiss, which we discuss more fully below.

The dispositive issue on appeal is whether Plaintiff substantially complied with the pre-suit notice requirements of Tenn. Code Ann. § 29-26-121. At least sixty days before filing a health care liability complaint, a potential plaintiff must "give written notice of the potential claim to each health care provider that will be a named defendant." Tenn. Code Ann. § 29-26-121(a)(1). According to Section 29-26-121(a)(2), the pre-suit notice must include the following:

(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

In addition, Section 29-26-121(b) provides the following requirement for a plaintiff's complaint:

> If a complaint is filed in any court alleging a claim for health care liability, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.

Our Supreme Court in *Martin v. Rolling Hills Hospital, LLC* adopted a burden-shifting approach to analyzing a defendant's challenge to the validity of a plaintiff's pre-suit notice. The *Martin* Court explained: "By statute, a health care liability plaintiff bears the initial burden of establishing compliance with Section 121 by stating in the pleadings and providing 'the documentation specified in subdivision (a)(2),' or of alleging 'extraordinary cause' for any noncompliance." 600 S.W.3d at 334 (citing Tenn. Code Ann. § 29-26-121(b)). If the defendant challenges the plaintiff's compliance with Section 121(a)(2), the defendant must file a motion to dismiss for failure to state a claim. *Id.* "The defense motion must describe 'how the plaintiff has failed to comply with [Section 121] by referencing specific omissions,' [*Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012)], and by explaining 'the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance,' *Stevens* [*ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*], 418 S.W.3d [547] at 556 [(Tenn. 2013)]." *Id.*

*Martin* provides that one way of satisfying this burden is by "alleging that the plaintiff's Section 121(a)(2)(E) medical authorization lacks one or more of the six core elements required by federal law for HIPAA compliance." *Id.* After the defendant establishes a prima facie showing that the plaintiff has failed to substantially comply with Section 121(a)(2), the burden shifts back to the plaintiff who "bears the burden of establishing substantial compliance with Section 121, which includes the burden of demonstrating that the noncompliance did not prejudice the defense." *Id.* at 335.

The *Martin* Court also clarified the role of prejudice in determining whether a plaintiff has substantially complied with the statutory requirements. Our Supreme Court explained that "prejudice is not a separate and independent analytical element," but rather "a consideration relevant to determining whether a plaintiff has substantially complied." *Id.* at 333 (internal citations omitted). "If a plaintiff's noncompliance with Section 121

frustrates or interferes with the purposes of Section 121 or prevents the defendant from receiving a benefit Section 121 confers, then the plaintiff likely has not substantially complied with Section 121"; however, "if the plaintiff's noncompliance neither frustrates or interferes with the purposes of Section 121 nor prevents a defendant from receiving a benefit the statute confers, then a court is more likely to determine that the plaintiff has substantially complied." *Id.* at 334 (internal citations omitted).

On appeal, Defendants argue that Plaintiff failed to meet his "initial burden" of demonstrating compliance with the statute by failing to comply with Tenn. Code Ann. § 29-26-121(b). Defendants broadly assert that Plaintiff failed to "attach all required documentation evidencing service of proper pre-suit notice in this case to his Complaint, including without limitation documentation showing pre-suit notice was compliant to all providers being sent pre-suit notice." Defendants' argument is not clear in that they do not tell this Court specifically what was not attached to the complaint. Given the lack of clarity in Defendants' argument, and that the crux of the issue is really whether Plaintiff provided HIPAA-compliant medical authorizations, we move on to consider whether Defendants met their burden of showing prejudice.

Defendants argue that they demonstrated that they were prejudiced given that three of the medical authorizations were missing one or more of the six core elements of a HIPAA-compliant medical authorization and one medical authorization was altogether missing. Based upon our review, we agree.

Our Supreme Court has clearly stated that one means of carrying the burden to prove prejudice is by "alleging that the plaintiff's Section 121(a)(2)(E) medical authorization lacks one or more of the six core elements required by federal law for HIPAA compliance." *Martin*, 600 S.W.3d at 334. 45 C.F.R. § 164.508(c)(1)(vi) provides that one core element is a "[s]ignature of the individual and date."

Plaintiff does not dispute the omissions alleged by Defendants. Based upon our review of the record, we find that the medical authorization permitting Sorce to obtain records from Mills is not signed or dated, the medical authorization permitting TVO to obtain records from the Hospital is not signed or dated, and the medical authorization permitting TVO to obtain medical records from itself is not signed or dated. Defendants alleged that there is no medical authorization granting Sorce authority to obtain records from Tazewell Orthopaedic & Arthritis Clinic ("Tazewell"). Although Plaintiff states that a medical authorization was provided to Sorce to obtain records from Tazewell, he acknowledges that it lacked a date and signature. We, accordingly, conclude that Defendants established a prima facie showing of prejudice. The burden shifted to Plaintiff to demonstrate that Defendants were not prejudiced by these omissions.

With respect to Plaintiff's burden, we note that this Court has previously explained that "a plaintiff substantially complies with section 29-26-121(a)(2)(E) when his or her

noncompliant medical authorization does not prevent a defendant health care provider from obtaining and using all the relevant medical records pertaining to the claim." *Christie v. Baptist Mem'l Hosp.*, No. W2022-01296-COA-R3-CV, 2023 WL 7646095, at *8 (Tenn. Ct. App. Nov. 15, 2023). Therefore, one way Plaintiff could have met his burden of proving substantial compliance was by establishing that the noncompliant medical authorizations at issue did not prevent Sorce and TVO from otherwise obtaining and using all the relevant medical records pertaining to Plaintiff's claim. Plaintiff claims he demonstrated just that. We disagree.

Plaintiff characterizes his lack of signature and date on the relevant medical authorizations as a "technical omission." Remarkably, Plaintiff argues: "The two authorizations contained all necessary language permitting Appellant Dr. Sorce to request records from the other listed providers; they lacked a date and signature by omission." In other words, these authorizations did not contain all necessary language permitting Sorce to request records from the other listed providers. Plaintiff's signature and the date of signature, together, are a core element according to 45 C.F.R. § 164.508(c)(1). Without Plaintiff's signature and the date of the signature, Sorce and TVO would be unable to obtain Decedent's medical records from the providers listed on the medical authorizations.

These are not technical omissions. This Court has explained: "A medical authorization lacking a core element is not valid. When a pre-suit medical authorization is facially invalid, the recipient is per se prejudiced and bears no burden to use or correct the form." *Hancock v. BJR Enterprises, LLC*, No. E2019-01158-COA-R3-CV, 2020 WL 2498390, at *7 (Tenn. Ct. App. May 14, 2020). By highlighting the omission of at least one core element, Defendants properly met their burden to demonstrate prejudice. Plaintiff bore the burden to demonstrate that, despite these deficiencies, Defendants were not prejudiced. Plaintiff failed to do so.

In fact, in his response to the motion to dismiss, Plaintiff addressed only one deficient medical authorization, the medical authorization permitting Sorce to obtain records from Mills. He did not address the lack of a medical authorization permitting Sorce to obtain records from Tazewell, and he did not address the missing core element on the medical authorizations purportedly permitting TVO to obtain records from the Hospital and from itself. Notwithstanding Plaintiff's failure to address three of the four allegedly noncompliant medical authorizations in its Trial Court response, we will address each deficient medical authorization in turn.

We first dispel with Defendants' argument that TVO suffered prejudice due to the noncompliant medical authorization permitting it to obtain medical records from itself. Our Supreme Court has held that HIPAA does not require a medical provider to obtain a medical authorization to use a patient's medical records already in its possession and "consult with counsel to evaluate the merits of a potential claim." *Bray v. Khuri*, 523 S.W.3d 619, 623 (Tenn. 2017). Given that TVO would have had access to any of

- 10 -

Decedent's medical records already in its possession, if any, we determine that TVO suffered no prejudice by this noncompliant authorization.

Plaintiff argues that TVO also did not suffer any prejudice due to the noncompliant medical authorization purportedly permitting it to obtain medical records from the Hospital. On appeal, Plaintiff refers to Defendants' answer to the complaint in which they denied that TVO was in existence at the time of the events described in the complaint. According to Plaintiff, Defendants on appeal "now attempt to resurrect Tennessee Valley Orthopaedics for the purpose of trying to string together enough evidence of omissions on appeal to establish prejudice."[1] In response, Defendants refer to Plaintiff's attachment of TVO's Tennessee Secretary of State filing as an exhibit to his response to the motion to dismiss. The filing indicates that TVO was formed on February 5, 2020, months before the alleged events occurred.

However, regardless of when TVO was formed, the fact remains that Plaintiff not only listed TVO as a provider receiving pre-suit notice but named it as a defendant. As a named provider receiving pre-suit notice, the statutory requirements of Section 121 applied to it. As our Supreme Court has clarified, Section 121 "ensures that a plaintiff give timely notice to a potential defendant of a health care liability claim so it can investigate the merits of the claim and pursue settlement negotiations before the start of the litigation." *Runions v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 549 S.W.3d 77, 86 (Tenn. 2018). Therefore, regardless of whether TVO was in existence at the time or not, Plaintiff named it as a provider receiving pre-suit notice, and therefore, owed TVO a HIPAA-compliant medical authorization so that it could investigate the merits of Plaintiff's claims and pursue settlement negotiations prior to litigation. Plaintiff failed to provide TVO with a HIPAA-compliant medical authorization allowing it to obtain medical records from the Hospital, which indisputably held relevant medical records, and therefore, frustrated its ability to investigate Plaintiff's claims. We, accordingly, find that Plaintiff did not substantially comply with Section 121 and that TVO suffered prejudice as a result.

Turning to the noncompliant medical authorizations provided to Sorce, we note that Plaintiff has acknowledged that the medical authorizations purportedly permitting Sorce to

---

[1] We notice that Plaintiff, in both his response to the motion to dismiss and his appellate brief, seems to operate under the mistaken belief that the fewer the pre-suit notice omissions, the less likely a defendant has suffered prejudice. For instance, he argues that the Trial Court properly found that the omissions were few in number. However, the number of omissions is not necessarily relevant or what is important to the framework confirmed in *Martin*. Rather than the number of omissions, what makes a HIPAA medical authorization fall outside "substantial compliance" with Section 121 is whether a defendant's ability to investigate the plaintiff's claim is frustrated. *Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322, 334 (Tenn. 2020) ("If a plaintiff's noncompliance with Section 121 frustrates or interferes with the purposes of Section 121 or prevents the defendant from receiving a benefit Section 121 confers, then the plaintiff likely has not substantially complied with Section 121.").

obtain records from Mills and Tazewell lacked a date and a signature. Given that at least one core element was missing from each of these, the only question is whether Plaintiff demonstrated that Sorce did not otherwise suffer prejudice.

With respect to the Tazewell medical authorization, Plaintiff argues that there is no evidence that Decedent was ever a patient at Tazewell at any time relevant to the case. In making this argument, it appears that Plaintiff cites to Sorce's responses to Plaintiff's requests for admission. However, in preparing the record for this appeal, the Trial Court explicitly struck this document from the record, given that it did not consider it when denying the motion to dismiss. In contravention of the Trial Court's decision to strike this from the record, Plaintiff cites to an older iteration of the appellate record that included the filing. This is not the only instance in which Plaintiff cites to a stricken document. We, accordingly, decline to consider Plaintiff's citation.

In any event, Plaintiff named Tazewell as a provider receiving pre-suit notice. Although Plaintiff argues that only the Hospital had relevant medical records, Plaintiff presented no evidence to establish this. We are not allowed to assume that is so. More importantly, Plaintiff presented no evidence to indicate that the other eleven providers who were sent pre-suit notice knew that only the Hospital had relevant medical records. In *Dolman v. Donovan*, No. W2015-00392-COA-R3-CV, 2015 WL 9315565 (Tenn. Ct. App. Dec. 23, 2015), this Court rejected the plaintiffs' argument that the defendants were not prejudiced by their failure to provide HIPAA-compliant medical authorizations that would allow the defendants to request medical records from "all other noticed providers" because they provided them with a valid medical authorization to obtain records from the hospital, which was the only provider with relevant records. *Id.* at *3, 6. This Court noted that the defendants did not concede that they were not "prejudiced by their lack of access to other medical records" and that the defendants did not know "whether any of the other noticed providers have any relevant medical records because they were not given an opportunity to request or obtain records from each of the other noticed providers due to Appellants' failure to comply with the mandates of Tennessee Code Annotated section 29-26-121(a)(2)(E)." *Id.* at *6.

This Court addressed a similar circumstance in *Shaw for Estate of Suttle v. Gross*, No. W2019-01448-COA-R3-CV, 2021 WL 1388007 (Tenn. Ct. App. Apr. 13, 2021). In *Shaw,* this Court explained that the plaintiff sent pre-suit notice to twenty-one different medical providers and was, therefore, required to provide HIPAA-compliant medical authorizations allowing the defendants to obtain complete medical records from each provider who was sent notice. *Id.* at *9. However, neither the defendant physician nor the defendant hospital received authorizations allowing them to obtain records from the other nineteen providers. *Id.*

This Court concluded:

> Thus, Appellant's failure to provide authorizations for the nineteen other providers interfered with the purpose of section 29-26-121(a)(2)(E) to provide defendants with the " 'actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records.' " Appellees were therefore denied a benefit conferred by the statute, sufficient to demonstrate prejudice.

*Id.* (citations omitted). This Court explicitly held that its conclusion was "not altered by the allegations in the amended complaint that Decedent was only treated at the Hospital" and noted that "while it may be true that Appellant was only treated during this particular episode at the Hospital, this allegation alone does not establish that the other nineteen providers had no relevant records." *Id.* at *10. This Court emphasized that it was the plaintiff's "choice to give these providers pre-suit notice, indicating that they were somehow relevant to this litigation" and that the plaintiff had "submitted no affidavits or other evidence to demonstrate that these other providers had no relevant records related to the injuries at issue in this case, much less that Appellees knew this fact during the pre-trial investigatory phase." *Id.*

We note that there are other cases in which this Court came to the opposite conclusion, such as *Hughes v. Henry Cnty. Med. Ctr.*, No. W2014-01973-COA-R3-CV, 2015 WL 3562733 (Tenn. Ct. App. June 9, 2015), in which this Court found that the defendant hospital was not prejudiced by the plaintiffs' failure to include the defendant physician's records in its release inasmuch as the hospital admitted that the physician did not possess any medical records, *Id.* at *2, 4, and *Christie*, 2023 WL 7646095, in which this Court held that the defendant hospital was not prejudiced by the defective medical authorizations because the facts established that the hospital "could have discovered that it was the only provider possessing relevant records from the documents it had access to during the pre-suit investigative phase" due to the fact that the decedent was a newborn baby who had been in the hospital's care and custody her "entire short life." *Id.* at *8. No such circumstance exists in this case to show that Sorce should or could have known that the only relevant record in this case was the Hospital's medical record.

Plaintiff in this case failed to demonstrate that Sorce should have known that Tazewell did not have any relevant medical records. Plaintiff chose to name Tazewell as a provider receiving pre-suit notice and, therefore, was statutorily obligated to provide Sorce with a HIPAA-compliant medical authorization allowing him to request medical records from Tazewell. If Sorce had a HIPAA-compliant medical authorization, he could have requested such medical records from Tazewell and discovered whether or not Tazewell had any relevant medical records or not. He did not have this opportunity. We, therefore, determine that Plaintiff failed to demonstrate that Sorce was not prejudiced by the noncompliant medical authorization for Tazewell.

The last medical authorization at issue is the one provided to Sorce so that he could obtain medical records from Mills. Plaintiff argued before the Trial Court that Sorce did not suffer prejudice by the noncompliant medical authorization, explaining:

> Defendant Sorce and Defendant Mills were both treating providers of Lonnie Elmore at Jefferson Memorial Hospital. Both already had full access to the entire hospital chart from Jefferson Memorial, and both were actual witnesses to the events from June 17-21, 2020 leading to Mr. Elmore's ultimate death. They were in the best position to know what happened, even more than Lonnie Elinore himself, who was sedated, encephalopathic, and unable to respond. HIPAA regulations expressly grant Defendant Sorce and Defendant Mills access to the relevant medical records of one another for treatment, payment and healthcare operations. 45 C.F.R. §164.506. Therefore, Defendant Sorce and Defendant Mills were already legally able to consult with one another about these permitted functions without breaching HIPAA. This case does not present a circumstance where Defendants are collateral medical providers without knowledge of Mr. Elmore's treatment or circumstances — to the contrary, they were principally involved in and witness to it.

> In addition, in this case the "relevant records" were exclusively the hospital chart. Defendant Sorce already had full HIPAA compliant access granted by the authorization he was given to the Jefferson Memorial record. *See Affidavit of K. Shea Jacome*. The actual record of admission for Mr. Elmore was the hospital chart. This case centered on the June 17, 2020 hospital admission of Lonnie Elmore, without any prior or subsequent collateral care by Defendants outside the hospital. This means there would be no records from Defendant Mills outside the hospital chart, to which he already had full access.

Likewise on appeal, Plaintiff argues that Sorce suffered no prejudice because the Hospital record was the only relevant medical record at issue and because HIPAA otherwise granted Sorce access to any records possessed by Mills.

With respect to Plaintiff's argument that the only relevant record was the Hospital's medical record, we again refer to this Court's decision in *Shaw*. In *Shaw*, this Court found that the plaintiff's allegation that the decedent was treated only at the hospital was insufficient to establish that the other medical providers who were sent pre-suit notice had no relevant records. *Shaw*, 2021 WL 1388007, at *10. Plaintiff's assertion that the Hospital was the only provider with relevant medical records is insufficient to establish that he substantially complied with Section 121.

In the Trial Court, Plaintiff also relied upon a misreading of 45 C.F.R. § 164.506 in support for his contention that Sorce and Mills could access one another's medical records. To the extent Plaintiff touches on this argument on appeal, we will address it. We start by looking at the definition of "health care operations" in 45 C.F.R. § 164.501, which provides in pertinent part:

Health care operations means any of the following activities of the covered entity to the extent that the activities are related to covered functions:

(1) Conducting quality assessment and improvement activities, including outcomes evaluation and development of clinical guidelines, provided that the obtaining of generalizable knowledge is not the primary purpose of any studies resulting from such activities; patient safety activities (as defined in 42 CFR 3.20); population-based activities relating to improving health or reducing health care costs, protocol development, case management and care coordination, contacting of health care providers and patients with information about treatment alternatives; and related functions that do not include treatment;

(2) Reviewing the competence or qualifications of health care professionals, evaluating practitioner and provider performance, health plan performance, conducting training programs in which students, trainees, or practitioners in areas of health care learn under supervision to practice or improve their skills as health care providers, training of non-health care professionals, accreditation, certification, licensing, or credentialing activities;

* * *

(4) Conducting or arranging for medical review, legal services, and auditing functions, including fraud and abuse detection and compliance programs;

Conducting or arranging for "legal services" is included in the definition of "health care operations."

Plaintiff cites to this definition, as well as the provisions of 45 C.F.R. § 164.506, to argue that HIPAA permitted Sorce and Mills to access each other's records without a medical authorization from the patient to do so. 45 C.F.R. § 164.506 provides in pertinent part:

(a) Standard: Permitted uses and disclosures. Except with respect to uses or disclosures that require an authorization under § 164.508(a)(2) through

- 15 -

(4) or that are prohibited under § 164.502(a)(5)(i), a covered entity may use or disclose protected health information for treatment, payment, or health care operations as set forth in paragraph (c) of this section, provided that such use or disclosure is consistent with other applicable requirements of this subpart.

\* \* \*

(c) Implementation specifications: Treatment, payment, or health care operations.

\* \* \*

(4) A covered entity may disclose protected health information to another covered entity for health care operations activities of the entity that receives the information, if each entity either has or had a relationship with the individual who is the subject of the protected health information being requested, the protected health information pertains to such relationship, and the disclosure is:

(i) <u>For a purpose listed in paragraph (1) or (2) of the definition of health care operations; or</u>

(ii) <u>For the purpose of health care fraud and abuse detection or compliance.</u>

(Emphasis added.)

This Court has already addressed a similar argument in *Wenzler v. Xiao Yu*, No. W2018-00369-COA-R3-CV, 2018 WL 6077847 (Tenn. Ct. App. Nov. 20, 2018). In that case, this Court held that the defendant dentistry practice could not share medical records with the defendant employee of the practice without a HIPAA-compliant medical authorization, citing to 45 C.F.R. § 164.506(c). *Id.* at *10-11. The *Wenzler* Court concluded: "The referenced purposes listed in paragraphs (1) and (2) are for quality-related health care operations and do not include legal services, which is separately addressed in paragraph (4)." *Id.* at *10.

To hold that Sorce could have obtained Decedent's medical records from Mills without a HIPAA-compliant medical authorization simply because Sorce and Mills both treated Decedent would run counter to the purpose of HIPAA and be inconsistent with the body of law surrounding this issue. Therefore, to the extent Plaintiff attempts to string together this argument on appeal, we reject it. Plaintiff failed to demonstrate substantial

- 16 -

compliance because he failed to demonstrate that Sorce was not prejudiced by the defective medical authorization.[2]

We note that Plaintiff requests that we affirm the Trial Court, and alternatively, in the event of reversal, remand to the Trial Court to allow him to conduct discovery as to prejudice. We decline to do so. The record indicates that Plaintiff did conduct some discovery, such as Sorce's responses to requests for admissions and answers to interrogatories that the Trial Court did not consider and struck from the appellate record. Plaintiff does not challenge the Trial Court's decision not to consider the discovery materials. Although the record indicates that Plaintiff filed these discovery materials in the Trial Court, he did not file an amended response to the motion to dismiss explaining how these discovery materials demonstrated that Defendants did not suffer prejudice. There also is no indication that Plaintiff ever asked for the Trial Court to stay the proceedings or for a continuance to allow him more time to conduct discovery.

Plaintiff merely argued before the Trial Court the following:

Defendants have filed a motion attempting to allege extraneous factual material in support of their argument that the motion should be granted. It is exactly this situation that Tennessee law was intended to prevent. Defendants attempt to suggest facts hoping the Court will adopt them in support of granting the motion, without providing any evidentiary support, and without filing an appropriate motion for summary judgment. Plaintiff, now faced with this situation, served a limited set of Interrogatories, Requests for Production, and Requests for Admission on Defendant Sorce on March 31, 2022 regarding matters directly material to the Court's consideration of Defendants' motion to dismiss. In the event the Court agrees Defendants' motion is more appropriately a motion for summary judgment, Plaintiff submits pursuant to Rule 56.06, the record should be supplemented with fully resolved responses to Plaintiff's pending requests materially bearing on the Court's consideration of Defendants' motion.

This was the extent of Plaintiffs' argument: Defendants alleged facts outside the complaint and, therefore, their motion should either "rest on the Complaint alone or be Denied as an improperly supported Motion for Summary Judgment." He did not request that the Trial

---

[2] We note that Plaintiff attached a medical authorization granting London & Amburn, P.C., the law firm Defendants' attorneys were members of at the time, access to "any and all medical records" from all medical providers that had treated Decedent. This authorization is dated December 1, 2021, a month after Plaintiff filed his complaint. Therefore, this authorization does not cure the pre-suit notice defects given the purpose of Section 121 is to ensure "that a plaintiff give timely notice to a potential defendant of a health care liability claim so it can investigate the merits of the claim and pursue settlement negotiations before the start of the litigation." *Runions v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 549 S.W.3d 77, 86 (Tenn. 2018) (emphasis added).

Court convert the motion to dismiss into a motion for summary judgment based on his filings submitted outside of the complaint. Therefore, we decline Plaintiff's request for remand to allow discovery. He had an opportunity to request that of the Trial Court but did not do so.

Based on the foregoing, we conclude that Plaintiff did not substantially comply with the requirements of Tennessee Code Annotated § 29-26-121, and therefore, Plaintiff was not entitled to the 120-day extension of the statute of limitations in which to file his complaint. We, accordingly, reverse the Trial Court's denial of Defendants' motion to dismiss.

## **Conclusion**

For the foregoing reasons, we reverse the Trial Court's denial of the motion to dismiss filed by appellants, Angelo J. Sorce, M.D. and Tennessee Valley Orthopedics, LLC. We remand to the Trial Court for collection of costs below. Costs of the appeal are assessed against the appellee, Robert Elmore, as Executor of the Estate of Lonnie Elmore.

_____
D. MICHAEL SWINEY, CHIEF JUDGE